# EXHIBIT A

1   David Fernandes (SBN 280944)
    BARON & BUDD, P.C.
2   3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
3   Tel.: (214) 521-3605
    Fax: (214) 279-9915
4   Email: dfernandes@baronbudd.com

5   *Counsel for Plaintiffs*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
6/17/2025 3:44 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk**

6               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                         **COUNTY OF LOS ANGELES**

8   PETER FAHEY, ADRIAN ALMEIDA,          CASE NO. 25STCV17605
    VINCENT ALTADONNA, MICHELLE
9   AMARO, DENISE AMARO-SHEPLER,          **COMPLAINT FOR DAMAGES AND**
    EDWARD ARAGONEZ, RODNEY BAIROS,       **DEMAND FOR JURY TRIAL**
10  MICHAEL BARRETT, JOSHUA BURTON,
11  ANTONIO BUTLER, ROBERT CANTER,        (1) Strict Liability Design Defect- Consumer
    KAREN CHARLTON, DANIELE               Expectation Test
12  COLOMBERA, ALEXANDER COOPER,          (2) Strict Liability Design Defect- Risk
    MATTHEW COX, TIMOTHY CROSS,           Benefit Test
13  ARTHUR CRUZ, KATHRYN GARCIA,          (3) Strict Liability Failure to Warn
    ERNEST GARCIA, JUAN GONZALEZ,         (4) Negligence- Duty to Warn
14  WILLIAM HAWKINS, EDGAR                (5) Negligence- Failure to Recall
    HERNANDEZ BANUELOS, GILBERT           (6) Violation of the Uniform Voidable
15  HERNANDEZ, JR., CRAIG HODES,          Transfer Act
    AUSTIN HOLMAN, MICHAEL                (7) Civil Conspiracy
16  IANNAMICO, PATRICIA LEMUS,
17  KATRINA LOPEZ, CHRISTOPHER
    MCELHANY, NANCY MILES, ERIK
18  MILLER, LARRY MONTANO, ANNA
    MUELLER, VLADISLAV NODELMAN,
19  BEHDAD NOORANI, JOHN ORETTA,
20  DARLENE RAMON, JAY RUFF, DARRIN
    SCHIADA, JOSEPH SCHWALLIE,
21  BRADLEY SLOCUM, ROBERT STOLTEY,
    JR., ERIC VAWTER, JONATHAN WILKIN,
22  GREGG YOST, ELLIOT DILBECK, JAMES
23  DOHERTY, STEPHEN DOTY, JOSHUA
    DUMMAR, STEVEN DUNNE, VINCENT
24  ENRIQUEZ, ANGEL ENRIQUEZ, DEREK
    ESPARZA, ISMAEL ESPINOZA
25  SALAMANCA, HENRIETTA ESQUIVEL,
26  ROBIN FENSTERMACHER, ALBERT
    FRANCO, III, RUBEN FUERTE, JR.,
27  ANGELICA GALLEGO, JAHCOYAH
    GEERER, DARLENA GOETZ, HERMAN
28  GRAJEDA, DAVID GUENTHER, TYLER

1  GUNN, FELICIA GUYTON, GLORIA
   HAMILTON, JAMISON HARTLEY,
2  DARREN HASSENAUER, GARY
   HEDMAN, LESLIE HENNING, RAFAEL
3  HERNANDEZ, JR., JOHN ISEMINGER,
4  GENEVIEVE JOSEPH, FELIPE VEGA, JR.,
   RICARDO VIDRIO, DAVID VILORIA,
5  ALANA WELZ, HOLLY WEST, MICHAEL
   WHITAKER, RICHARD WILLIAMS,
6  DIANE WILLIAMS, WAYNE WONG,
   NEILL WOOD, ROBERT YBARRA,
7  DENNY AARON DESANTIS, MARCUS
8  DITTMAR, LINDA DOVE, JORGE
   FLORES, JESUS GARCIA, JR.,
9  GWENDOLYN GILMER, EDWIN GOMEZ,
   JESUS GOMEZ, JR., MICHEAL WRIGHT,
10 AND LAWRENCE ZERG,

11

12 Plaintiffs,

13 vs.

14 3M COMPANY (f/k/a Minnesota Mining and
   Manufacturing, Co.); AGC CHEMICAL
15 AMERICAS, INC.; AGC, INC. (f/k/a Asahi
   Glass Co., Ltd.);  ARCHROMA U.S., INC.;
16 ARKEMA, INC.; BASF CORPORATION;
   BUCKEYE FIRE EQUIPMENT CO.;
17 CHEMDESIGN PRODUCTS, INC.;
   CHEMGUARD, INC.; CLARIANT
18 CORPORATION; CORTEVA, INC.;
   DUPONT DE NEMOURS, INC.; DYNAX
19 CORPORATION; E.I. DU PONT DE
   NEMOURS AND COMPANY; THE
20 CHEMOURS COMPANY; THE
   CHEMOURS COMPANY FC, LLC; TYCO
21 FIRE PRODUCTS, LP, AND JOHN DOE
   DEFENDANTS 1-49,

22

23 Defendants.

24

25        COME NOW Plaintiffs Peter Fahey, Adrian Almeida, Vincent Altadonna, Michelle

26 Amaro, Denise Amaro-Shepler, Edward Aragonez, Rodney Bairos, Michael Barrett, Joshua

27 Burton, Antonio Butler, Robert Canter, Karen Charlton, Daniele Colombera, Alexander Cooper,

28 Matthew Cox, Timothy Cross, Arthur Cruz, Steven Dunne, Vincent Enriquez, Kathryn Garcia,

1   Ernest Garcia, Juan Gonzalez, William Hawkins, Edgar Hernandez Banuelos, Gilbert Hernandez,

2   Jr., Craig Hodes, Austin Holman, Michael Iannamico, Patricia Lemus, Katrina Lopez, Christopher

3   Mcelhany, Nancy Miles, Erik Miller, Larry Montano, Anna Mueller, Vladislav Nodelman, Behdad

4   Noorani, John Oretta, Darlene Ramon, Jay Ruff, Darrin Schiada, Joseph Schwallie, Bradley

5   Slocum, Robert Stoltey, Jr., Eric Vawter, Jonathan Wilkin, Gregg Yost, Elliot Dilbeck, James

6   Doherty, Stephen Doty, Joshua Dummar, Angel Enriquez, Derek Esparza, Henrietta Esquivel,

7   Robin Fenstermacher, Albert Franco, Iii, Ruben Fuerte, Jr., Angelica Gallego, Jahcoyah Geerer,

8   Darlena Goetz, Herman Grajeda, David Guenther, Tyler Gunn, Felicia Guyton, Gloria Hamilton,

9   Jamison Hartley, Darren Hassenauer, Gary Hedman, Leslie Henning, Rafael Hernandez, Jr., John

10  Iseminger, Genevieve Joseph, Felipe Vega, Jr., Ricardo Vidrio, David Viloria, Alana Welz, Holly

11  West, Michael Whitaker, Richard Williams, Diane Williams, Wayne Wong, Neill Wood, Robert

12  Ybarra, Denny Aaron Desantis, Marcus Dittmar, Linda Dove, Jorge Flores, Jesus Garcia, Jr.,

13  Gwendolyn Gilmer, Edwin Gomez, Jesus Gomez, Jr., Micheal Wright, and Lawrence Zerg, by

14  and through undersigned counsel, and bring this action against Defendants 3M Company (f/k/a

15  Minnesota Mining and Manufacturing, Co.), AGC Chemical Americas, Inc., AGC, Inc. (f/k/a

16  Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire

17  Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Clariant Corporation,

18  Corteva, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and

19  Company, The Chemours Company, The Chemours Company FC, LLC, Tyco Fire Products, LP

20  (individually and as successor-in-interest to The Ansul Company), and John Doe Defendants 1-

21  49.  Plaintiffs hereby allege, upon information and belief, as follows:

## I.    SUMMARY OF THE CASE

23      1.      Plaintiffs bring this action against Defendants who manufactured aqueous film-

24  forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The

25  AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS")

26  including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic

27  acid ("PFOS").

28      2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS,

PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.    PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.    At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluuourinated chemicals contained in AFFF.

5.    This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.    Due to the widespread PFAS contamination caused by Defendants' Fluorosurfactant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.    Plaintiffs, as residents and those who visited, worked, or resided in the

1   contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

2       10.    Plaintiffs' unwitting exposure to PFAS in their water supply as a result of

3   Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

4       11.    Plaintiffs file this lawsuit to recover compensatory and all other damages, including

5   but not limited to past and future (1) expenses for care, treatment and hospitalization incident to

6   their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or

7   earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical

8   impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of

9   life; and (9) exemplary damages.

10                          **II.      PARTIES**

11      **A.  <u>Plaintiffs</u>**

12      12.    Plaintiff Peter Fahey is a citizen and resident of Los Angeles, California in Los

13   Angeles County.  From approximately 2004 to 2025, Plaintiff Peter Fahey was regularly exposed

14   to PFAS in drinking water at residences in West Hollywood, Valley Village, Sherman Oaks, and

15   Culver City, California, Brooklyn, New York, and Winston Salem, North Carolina.

16      13.    On or about 2019, Plaintiff Peter Fahey was diagnosed with testicular cancer in Los

17   Angeles, California, and subsequently underwent a right total orchiectomy and retroperitoneal

18   lymph node dissection.

19      14.    Plaintiff Adrian Almeida is a citizen and resident of Monterey Park, California.

20   From approximately 1969 to 2025, Plaintiff Adrian Almeida was regularly exposed to PFAS

21   through drinking water at residences in Monterey Park and Los Angeles, California.

22      15.    On or about 2024, Plaintiff Adrian Almeida was diagnosed with clear cell renal

23   carcinoma in Baldwin Park, California, and subsequently underwent a right radical nephrectomy,

24   chemotherapy, and immunotherapy.

25      16.    Plaintiff Vincent Altadonna is a citizen and resident of Manteca, California. From

26   1989 to 2025, Plaintiff Vincent Altadonna was regularly exposed to PFAS through drinking water

27   at residences in Manteca, Modesto, Monterey, and Marina, California.

28      17.    On or about 2023, Plaintiff Vincent Altadonna was diagnosed with kidney cancer

in Manteca, California and subsequently underwent a right partial nephrectomy.

18.    Plaintiff Michelle Amaro is a citizen and resident of Lockeford, California. From approximately 2001 to 2023, Plaintiff Michelle Amaro was regularly exposed to PFAS through drinking water at residences in Modesto, California.

19.    On or about 2024, Plaintiff Michelle Amaro was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a right radical nephrectomy.

20.    Plaintiff Denise Amaro-Shepler is a citizen and resident of Elk Grove, California. From approximately 1987 to 2007, Plaintiff Denise Amaro-Shepler was regularly exposed to PFAS through drinking water at residences in Pleasanton, Riverbank, Dublin, Citrus Heights, Roseville, Sacramento, and Carmichael, California.

21.    On or about 2005, Plaintiff Denise Amaro-Shepler was diagnosed with kidney cancer in Pleasanton, California, and subsequently underwent left radical nephrectomy and adrenalectomy.

22.    Plaintiff Edward Aragonez is a citizen and resident of Whittier, California. From approximately 1968 to 2025, Plaintiff Edward Aragonez was regularly exposed to PFAS through drinking water at residences in Whittier and La Palma, California.

23.    On or about 2005, Plaintiff Edward Aragonez was diagnosed with testicular cancer and subsequently underwent a right total orchiectomy and radiation treatment.

24.    Plaintiff Rodney Bairos is a citizen and resident of Waterford, California. From approximately 1970 to 2001, Plaintiff Rodney Bairos was regularly exposed to PFAS through drinking water at residences and workplaces in Modesto, Manteca, and Palm Desert, California.

25.    On or about 2024, Plaintiff Rodney Bairos was diagnosed with kidney cancer in Modesto, California, and subsequently underwent a right radical nephrectomy.

26.    Plaintiff Michael Barrett is a citizen and resident of Glendora, California. From approximately 1964 to 2025, Plaintiff Michael Barrett was regularly exposed to PFAS through drinking water at residences and workplaces in Arrowhead Lake, Azusa, Glendale, and Glendora California.

27.    On or about 2011, Plaintiff Michael Barrett was diagnosed with kidney cancer in

Pasadena, California and subsequently underwent a partial nephrectomy.

28.    Plaintiff Joshua Burton is a citizen and resident of Bakersfield, California. From approximately 1978 to 2025, Plaintiff Joshua Burton was regularly exposed to PFAS through drinking water at residences in Bakersfield, California.

29.    On or about 2017 Plaintiff Joshua Burton was diagnosed with testicular cancer in Bakersfield, California, and subsequently underwent a right total orchiectomy and chemotherapy treatment.

30.    Plaintiff Antonio Bulter is a citizen and resident of North Hills, California. From approximately 2000 to 2025, Plaintiff Antonio Butler was regularly exposed to PFAS through drinking water at residences in Los Angeles, Tarzana, Oakland, and Berkeley, California.

31.    Plaintiff Antonio Butler was also regularly exposed to PFAS through drinking water while serving in the army and stationed at Fort Cavazos (now Fort Hood) in Killeen Texas, Fort Benning (now Fort Moore) in Fort Moore, Georgia, and Fort Gordon (now Fort Eisenhower) in Augusta, Georgia.

32.    On or about February 2020, Plaintiff Antonio Butler was diagnosed with kidney cancer in Los Angeles, California and underwent related treatment.

33.    Plaintiff Robert Canter is a citizen and resident of Stockton, California. From approximately 1990 to 2024, Plaintiff Robert Canter was regularly exposed to PFAS through drinking water at residences Stockton, San Jacinto, Hayward, and Oakland, California.

34.    Plaintiff Robert Canter was also regularly exposed to PFAS through drinking water while serving in the air force at Travis Air Force Base in Fairfield, California in 2010.

35.    On or about 2023, Plaintiff Robert Canter was diagnosed with clear cell renal carcinoma in Sacramento, California, and subsequently underwent kidney removal, chemotherapy and immunotherapy.

36.    Plaintiff Karen Charlton is a citizen and resident of West Covina, California. From approximately 1983 to 2025, Plaintiff Karen Charlton was regularly exposed to PFAS through drinking water at residences in Lakewood, Whittier, Downey, Rowland Heights, and West Covina, California.

37.     On or about 2019, Plaintiff Karen Charlton was diagnosed with kidney cancer in Glendora, California, and subsequently underwent a right partial nephrectomy.

38.     Plaintiff Daniele Colombera is a citizen and resident of Inglewood, California. From approximately 2006 to 2025, Plaintiff Daniele Colombera was regularly exposed to PFAS through drinking water at residences and workplaces in Los Angeles, West Hollywood, and Inglewood, California.

39.     On or about 2009, Plaintiff Daniele Colombera was diagnosed with testicular cancer in Los Angeles, California, and subsequently underwent a total orchiectomy and retroperitoneal lymph node dissection.

40.     Plaintiff Alexander Cooper is a citizen and resident of Chino, California. From approximately 1978 to 2021, Plaintiff Alexander Cooper was regularly exposed to PFAS through drinking water at residences in Upland, California.

41.     On or about 2018, Plaintiff Alexander Cooper was diagnosed with testicular cancer in Irvine, California and subsequently underwent related treatment.

42.     Plaintiff Matthew Cox is a citizen and resident of Redding, California. From approximately 1976 to 2012, Plaintiff Matthew Cox was regularly exposed to PFAS through drinking water at residences in Lower Lake, San Jose, and Redding, California.

43.     On or about 2011, Plaintiff Matthew Cox was diagnosed with clear cell renal carcinoma in San Francisco, California and subsequently underwent a left partial nephrectomy. On or about 2015, Plaintiff Matthew Cox was diagnosed with ulcerative colitis in Redding, California.

44.     Plaintiff Timothy Cross is a citizen and resident of Wofford Heights, California. From approximately 1994 to 2025, Plaintiff Timothy Cross was regularly exposed to PFAS through drinking water at residences in Wofford Heights, California.

45.     On or about 2024, Plaintiff Timothy Cross was diagnosed with kidney cancer in Bakersfield, California and underwent a left radical nephrectomy.

46.     Plaintiff Arthur Cruz is a citizen and resident of Riverside, California. From approximately 2000 to 2025, Plaintiff Arthur Cruz was regularly exposed to PFAS through

1   drinking water at residences and workplaces in Riverside and San Bernardino, California.

2       47.    On or about 2022, Plaintiff Arthur Cruz was diagnosed with testicular cancer in

3   Colton, California, and subsequently underwent chemotherapy and radiation treatment.

4       48.    Plaintiff Steven Dunne is a citizen and resident of Burlingame, California.  From

5   approximately 1964 to 2025, Plaintiff Steven Dunne was regularly exposed to PFAS through

6   drinking water at his residence in Burlingame, California.

7       49.    On or about 2024, Plaintiff Steven Dunne was diagnosed with kidney cancer in San

8   Mateo, California and subsequently underwent a radical nephrectomy.

9       50.    Plaintiff Vincent Enriquez is a citizen and resident of Temecula, California.  From

10  approximately 1969 to 2025, Plaintiff Vincent Enriquez was regularly exposed to PFAS through

11  drinking water at residences in Temecula, La Puente, West Covina, and Rosemead, California.

12      51.    On or about 2021, Plaintiff Vincent Enriquez was diagnosed with kidney cancer in

13  Oceanside, California and subsequently underwent left partial nephrectomy and immunotherapy.

14  On or about 2022, Plaintiff Vincent Enriquez was diagnosed with clear cell renal carcinoma and

15  subsequently underwent additional surgery.

16      52.    Plaintiff Kathryn Garcia is a citizen and resident of Chula Vista, California.  From

17  approximately 1987 to 2025, Plaintiff Kathryn Garcia was regularly exposed to PFAS through

18  drinking water at residences and workplaces in Chula Vista, Bonita, National City, and Imperial

19  Beach, California.

20      53.    On or about 2017, Plaintiff Kathryn Garcia was diagnosed with kidney cancer in

21  San Diego, California and subsequently underwent a left radical nephrectomy.

22      54.    Plaintiff Ernest Garcia is a citizen and resident of Palmdale, California. From

23  approximately 1969 to 2025, Plaintiff Ernest Garcia was regularly exposed to PFAS through

24  drinking water at residences in Palmdale, Santa Clarita, Ventura, Van Nuys, and Canoga Park,

25  California.

26      55.    On or about 2024, Plaintiff Ernest Garcia was diagnosed with testicular cancer in

27  Los Angeles, California.

28      56.    Plaintiff Juan Gonzalez is a citizen and resident of Commerce, California. From

approximately 1994 to 2025, Plaintiff Juan Gonzalez was regularly exposed to PFAS through drinking water at residences in Commerce, Monterey Park, and East Los Angeles, California.

57.     On or about 2024, Plaintiff Juan Gonzalez was diagnosed with testicular cancer in Los Angeles, California, and subsequently underwent a total orchiectomy and chemotherapy.

58.     Plaintiff William Hawkins is a citizen and resident of Gilroy, California. From approximately 1965 to 2025, Plaintiff William Hawkins was regularly exposed to PFAS through drinking water at residences and workplaces in Gilroy, Fremont, and Newark, California, and Minneapolis, Minnesota.

59.     On or about 2010, Plaintiff William Hawkins was diagnosed with testicular cancer in San Jose, California and subsequently underwent a total orchiectomy and chemotherapy.

60.     Plaintiff Edgar Hernandez Banuelos is a citizen and resident of Bellflower, California. From approximately 1989 to 2025, Plaintiff Edgar Hernandez Banuelos was regularly exposed to PFAS through drinking water at residences and workplaces in Downey, Bell Gardens, Cerritos, and Artesia, California.

61.     On or about 2019, Plaintiff Edgar Hernandez Banuelos was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a total orchiectomy, retroperitoneal lymph node dissection, and chemotherapy.

62.     Plaintiff Gilbert Hernandez, Jr. is a citizen and resident of Jurupa Valley, California. From approximately 1970 to 2025, Plaintiff Gilbert Hernandez, Jr. was regularly exposed to PFAS through drinking water at residences in Jurupa Valley and Riverside, California. Plaintiff Gilbert Hernandez, Jr. was also regularly exposed to PFAS through drinking water in the army while stationed in Fort Knox, Kentucky and Fort Moore, Georgia.

63.     On or about 2024, Plaintiff Gilbert Hernandez, Jr. was diagnosed with clear cell renal carcinoma in Loma Linda, California and subsequently underwent immunotherapy.

64.     Plaintiff Craig Hodes is a citizen and resident of Palm Desert, California. From approximately 1978 to 2025, Plaintiff Craig Hodes was regularly exposed to PFAS through drinking water at residences and workplaces in Palm Desert, West Hollywood, Beverly Hills, Huntington Beach, Marina Del Rey, and Los Angeles, California.

1    65.    On or about 2025, Craig Hodes was diagnosed with kidney cancer in Rancho
2    Mirage, California.

3    66.    Plaintiff Austin Holman is a citizen and resident of Los Angeles, California. From
4    approximately 1996 to 2024, Plaintiff Austin Holman was regularly exposed to PFAS through
5    drinking water and residences in Los Angeles and Irvine, California.

6    67.    On or about 2008, Plaintiff Austin Holman was diagnosed with testicular cancer in
7    Irvine, California and subsequently underwent a total left orchiectomy and chemotherapy.

8    68.    Plaintiff Michael Iannamico is citizen and resident of Livermore, California.  From
9    approximately 1970 to 2014, Plaintiff Michael Iannamico was regularly exposed to PFAS through
10   drinking water at residences in Fremont and Newark, California.

11   69.    On or about 2013, Plaintiff Michale Iannamico was diagnosed with kidney cancer
12   in Fremont, California and subsequently underwent a left partial nephrectomy.

13   70.    Plaintiff Patricia Lemus is a citizen and resident of Huntington Beach, California.
14   From approximately 1980 to 2025, Plaintiff Patricia Lemus was regularly exposed to PFAS in
15   drinking water at residences and workplaces in Huntington Beach, Irvine, Westminster, Garden
16   Grove, Midway, and Fountain Valley, California.

17   71.    On or about 2019, Plaintiff Patricia Lemus was diagnosed with clear cell renal
18   carcinoma in Newport Beach, California, and subsequently underwent a right radical
19   nephrectomy.  On or about 2025, Plaintiff Patricia Lemus was again diagnosed with clear cell
20   renal carcinoma in Newport Beach, California, and subsequently underwent a left partial
21   nephrectomy.

22   72.    Plaintiff Katrina Lopez is a citizen and resident of Ceres, California. From
23   approximately 1988 to 2020, Plaintiff Katria Lopez was regularly exposed to PFAS through
24   drinking water at residences in Modesto, Ceres, Merced, Visalia, and Tulare, California.

25   73.    On or about 2022, Plaintiff Katrina Lopez was diagnosed with kidney cancer in
26   Stockton, California, and subsequently underwent cryoablation.

27   74.    Plaintiff Christopher McElhany is a citizen and resident of Oakland, California.
28   From approximately 1979 to 2025 Plaintiff Christopher McElhany was regularly exposed to PFAS

through drinking water at residences and workplaces in Oakland, Dublin, Livermore, and Pleasanton, California.

75.    On or about 2018, Plaintiff Christopher McElhany was diagnosed with testicular cancer in Oakland, California and subsequently underwent a right total orchiectomy and chemotherapy.

76.    Plaintiff Nancy Miles is a citizen and resident of San Jose, California.  From approximately 1992 to 2025, Plaintiff Nancy Miles was regularly exposed to PFAS through drinking water at residences and workplaces in Santa Cruz and San Jose, California, and Puyallup, Washington.

77.    On or about 2002, Plaintiff Nancy Miles was diagnosed with thyroid disease in San Jose, California.  On or about 2021, Plaintiff Nancy Miles was diagnosed with kidney cancer in San Jose, California and subsequently underwent a partial nephrectomy.

78.    Plaintiff Erik Miller is a citizen and resident of Ventura, California. From approximately 1997 to 2025, Plaintiff Erik Miller was regularly exposed to PFAS through drinking water at residences in Ventura, California, Parker, Colorado, and Dallas, Texas.

79.    On or about 2024, Plaintiff Erik Miller was diagnosed with kidney cancer in Ventura, California, and subsequently underwent a right radical nephrectomy and immunotherapy.

80.    Plaintiff Larry Montano is a citizen and resident of Chula Vista, California. From approximately 1993 to 2025, Plaintiff Larry Montano was regularly exposed to PFAS through drinking water at residences and workplaces in Chula Vista and Fresno, California.

81.    On or about 2006, Plaintiff Larry Montano was diagnosed with kidney cancer in Fresno, California and subsequently underwent a right radical nephrectomy.

82.    Plaintiff Anna Mueller is a citizen and resident of Manteca, California. From approximately 1983 to 2025, Plaintiff Anna Mueller was regularly exposed to PFAS through drinking water at residences and workplaces in Manteca, California.

83.    On or about 2022, Plaintiff Anna Mueller was diagnosed with kidney cancer in French Camp, California.

84.    Plaintiff Vladislav Nodelman is a citizen and resident of San Diego, California.

From approximately 1983 to 2025, Plaintiff Vladislav Nodelman was regularly exposed to PFAS through drinking water at residents and workplaces in San Diego and Solana Beach, California and State College, Pennsylvania.

85.     On or about 2011, Plaintiff Vladislav Nodelman was diagnosed with kidney cancer in San Diego, California and subsequently underwent a partial nephrectomy.

86.     Plaintiff Behdad Noorani is a citizen and resident of Los Angeles, California.  From approximately 1987 to 2025, Plaintiff Behdad Noorani was regularly exposed to PFAS through drinking water at residences and workplaces in Los Angeles and Beverly Hills, California.

87.     On or about 2015, Plaintiff Behdad was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a total orchiectomy.

88.     Plaintiff John Oretta is a citizen and resident of Oxnard, California. From approximately 1981 to 2025, Plaintiff John Oretta was regularly exposed to PFAS through drinking water at residences and workplaces in Oxnard and Ventura, California.

89.     On or about 2022, Plaintiff John Oretta was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a radical nephrectomy.

90.     Plaintiff Darlene Ramon is a citizen and resident of El Cajon, California. From approximately 1970 to 2025, Plaintiff Darlene Ramon was regularly exposed to PFAS through drinking water at residences in El Cajon, Lakeside, San Diego, and Santee, California.

91.     On or about 2021, Plaintiff Darlene Ramon was diagnosed with kidney cancer in San Diego, California and subsequently underwent a partial nephrectomy.

92.     Plaintiff Jay Ruff is a citizen and resident of Oroville, California. From approximately 1995 to 2006, Plaintiff Jay Ruff was regularly exposed to PFAS through drinking water at residences and workplaces in Oroville, California.

93.     On or about 2017, Plaintiff Jay Ruff was diagnosed with testicular cancer in Oroville, California and subsequently underwent a total left orchiectomy and radiation treatment.

94.     Plaintiff Darrin Schiada is a citizen and resident of Crestline, California. From approximately 1979 to 2025, Plaintiff Darrin Schiada was regularly exposed to PFAS through drinking water at residences and workplaces in Crestline, Whittier, Yorba Linda, and La Habra,

1    California.

2        95.    On or about 2021 Plaintiff Darrin Schiada was diagnosed with kidney cancer in

3    Loma Linda, California and subsequently underwent a radical nephrectomy.

4        96.    Plaintiff Joseph Schwallie is a citizen and resident of Orange, California. From

5    approximately 1961 to 2025, Plaintiff Joseph was regularly exposed to PFAS through drinking

6    water at residences in Orange, Tustin, and Costa Mesa, California.  Plaintiff Joseph Schwallie was

7    also regularly exposed to PFAS through drinking water while serving in the army and stationed at

8    Fort Lewis (now Joint Base Lewis-McChord) in Washington, and Fort Ord in Pacific, California.

9        97.    On or about 2023, Plaintiff Joseph Schwallie was diagnosed with kidney cancer in

10   Long Beach, California and subsequently underwent cryoablation.

11       98.    Plaintiff Bradley Slocum is a citizen and resident of Hermosa Beach, California.

12   From approximately 1962 to 1980, Plaintiff Bradley Slocum was regularly exposed to PFAS

13   through drinking water at residences and workplaces in Bernards, New Jersey and Greenville,

14   North Carolina.

15       99.    On or about 2005, Plaintiff Bradley Slocum was diagnosed with kidney cancer in

16   Durate, California and subsequently underwent radical nephrectomy, cryoablation, chemotherapy,

17   and radiation, followed by several other surgeries due to metastatic kidney cancer.

18       100.   Plaintiff Robert Stoltey, Jr. is a citizen and resident of El Cajon, California. From

19   approximately 1994 to 2025, Plaintiff Robert Stoltey, Jr. was regularly exposed to PFAS through

20   drinking water at residences in El Cajon, La Mesa, San Pedro, and Torrance, California.

21       101.   On or about 2023, Plaintiff Robert Stoltey, Jr., was diagnosed with testicular cancer

22   in San Diego, California and subsequently underwent related treatment.

23       102.   Plaintiff Eric Vawter is a citizen and resident of Littlerock, California. From

24   approximately 1971 to 1993, Plaintiff Erik Vawter was regularly exposed to PFAS through

25   drinking water at residences in Lancaster, California.

26       103.   On or about 2007, Plaintiff Erik Vawter was diagnosed with kidney cancer in Los

27   Angeles, California and subsequently underwent a partial nephrectomy.

28       104.   Plaintiff Jonathan Wilkin is a citizen and resident of Los Angeles, California.  From

1    approximately 1976 to 2009, Plaintiff Jonathan Wilkin was regularly exposed to PFAS through

2    drinking water at residences and workplaces in Los Angeles, Newport Beach, Santa Ana, Santa

3    Barbara, and Beverly Hills, California.

4         105.    On or about 2012, Plaintiff Jonathan Wilkin was diagnosed with testicular cancer

5    in Beverly Hills, California, and subsequently underwent a total orchiectomy, chemotherapy, and

6    radiation treatment.

7         106.    Plaintiff Gregg Yost is a citizen and resident of Covina, California. From

8    approximately 1965 to 2025, Plaintiff Gregg Yost was regularly exposed to PFAS through

9    drinking water at residences in Covina and Glendora, California.

10        107.    On or about 2010 Plaintiff Gregg Yost was diagnosed with thyroid disease in

11   Covina, California.  On or about 2024, Plaintiff Gregg Yost was diagnosed with clear cell renal

12   carcinoma in West Covina, California and subsequently underwent a partial nephrectomy.

13        108.    Plaintiff Elliot Dilbeck is a citizen and resident of Orange, California. From

14   approximately 1992 to 2025, Plaintiff Elliot Dillbeck was regularly exposed to PFAS through

15   drinking water at residences in City of Orange, City of Santa Ana, East Orange County, City of

16   Anaheim, City of Garden Grove, and Irvine Ranch, California.

17        109.    On or about 2013, Plaintiff Elliot Dillbeck was diagnosed with testicular cancer in

18   Orange County, California and subsequently underwent a total right orchiectomy.

19        110.    Plaintiff James Doherty is a citizen and resident of Oceanside, California. From

20   approximately 1992 to 2025, Plaintiff James Doherty was regularly exposed to PFAS through

21   drinking water at residences in Oceanside and San Diego, California and Burlington,

22   Massachusetts.

23        111.    On or about 2011, Plaintiff James Doherty was diagnosed with kidney cancer in

24   Burlington, Massachusetts and subsequently underwent a partial nephrectomy.

25        112.    Plaintiff Stephen Doty is a citizen and resident of Redlands, California. From

26   approximately 1986 to 2004, Plaintiff Stephen Doty was regularly exposed to PFAS through

27   drinking water at residences and workplaces in Yucaipa, Calimesa, Redlands, and Riverside,

28   California.

113.   On or about 2018, Plaintiff Stephen Doty was diagnosed with testicular cancer in Riverside, California and subsequently underwent a total orchiectomy.

114.   Plaintiff Joshua Dummar is a citizen and resident of Porterville, California. From approximately 1991 to 2025, Plaintiff Joshua Dummar was regularly exposed to PFAS through drinking water at residences and workplaces in Porterville and Bakersfield, California.

115.   On or about 2012, Plaintiff Joshua Dummar was diagnosed with testicular cancer in Porterville, California and subsequently underwent a total orchiectomy, a tumor removal procedure, and chemotherapy.

116.   Plaintiff Angel Enriquez is a citizen and resident of Bakersfield, California. From approximately 2004 to 2025, Plaintiff Angel Enriquez was regularly exposed to PFAS through drinking water at residences in Bakersfield, California and San Luis Obispo, California.

117.   On or about 2012, Plaintiff Angel Enriquez was diagnosed with testicular cancer in Templeton, California and subsequently underwent a right total orchiectomy and radiation treatment.

118.   Plaintiff Derek Esparza is a citizen and resident of Atascadero, California. From approximately 1997 to 2025, Plaintiff Derek Esparza was regularly exposed to PFAS through drinking water at residences and workplaces in Atascadero, California and Paso Robles, California.

119.   On or about 2020, Plaintiff Derek Esparza was diagnosed with testicular cancer in San Luis Obispo, California and subsequently underwent a right total orchiectomy and radiation treatments.

120.   Plaintiff Ismael Espinoza Salamanca is a citizen and resident of Long Beach, California. From approximately 1981 to 2025, Plaintiff Ismael Espinoza Salamanca was regularly exposed to PFAS through drinking water at residences and workplaces in Long Beach and Los Angeles, California.

121.   On or about 2021, Plaintiff Ismael Espinoza Salamanca was diagnosed with clear cell renal carcinoma in Torrance, California and subsequently underwent immunotherapy, a craniotomy, and radiation treatment in Lakewood, California.

122.   Plaintiff Henrietta Esquivel is a citizen and resident of Covina, California. From approximately 1971 to 2025, Plaintiff Henrietta Esquivel was regularly exposed to PFAS through drinking water at residences in Covina, Baldwin Park, and Los Angeles, California.

123.   On or about 2009, Plaintiff Henrietta Esquivel was diagnosed with kidney cancer in Baldwin Park, California. Plaintiff Henrietta Esquivel subsequently underwent a right radical nephrectomy in Baldwin Park, California.

124.   Plaintiff Robin Fenstermacher is a citizen and resident of Thousand Oaks, California. From approximately 1973 to 2025, Plaintiff Robin Fnstermacher was regularly exposed to PFAS through drinking water at residences and workplaces in Ventura, Camarillo, Woodland Hills, and Los Angeles, California.

125.   On or about 2022, Plaintiff Robin Fenstermacher was diagnosed with kidney cancer in Thousand Oaks, California and subsequently underwent a left partial nephrectomy in Los Angeles, California.

126.   Plaintiff Albert Franco, III is a citizen and resident of Sacramento, California. From approximately 1979 to 2025, Plaintiff Albert Franco, III was regularly exposed to PFAS through drinking water at residences and workplaces in Sacramento and Elk Grove, California.

127.   On or about 2006, Plaintiff Albert Franco, III was diagnosed with kidney cancer and subsequently underwent a right radical nephrectomy in Sacramento, California.

128.   Plaintiff Ruben Fuerte, Jr. Is a citizen and resident of San Bernardino, California. From approximately 1964 to 2025, Plaintiff Ruben Fuerte, Jr. was regularly exposed to PFAS through drinking water at residences in Rialto and San Bernardino, California.

129.   On or about 2011, Plaintiff Ruben Fuerte, Jr. was diagnosed with kidney cancer in Fontana, California and subsequently underwent a right partial nephrectomy in Cerritos, California.

130.   Plaintiff Angelica Gallego is a citizen and resident of San Diego, California. From approximately 1996 to 2025, Plaintiff Angelica Gallego was regularly exposed to PFAS through drinking water at residences in San Diego, El Cajon, and Bakersfield, California.

131.   On or about 2014, Plaintiff Angelica Gallego was diagnosed with kidney cancer

1  and subsequently underwent a left radical nephrectomy and tumor removal procedure in San
2  Diego, California.

3      132.    Plaintiff Jahcoyah Geerer is a citizen and resident of North Highlands, California.
4  From approximately 1997 to 2025, Plaintiff Jahcoyah Geerer was regularly exposed to PFAS
5  through drinking water at residences in North Highlands, Sacramento, and Fair Oaks, California
6  and Reno, Nevada.

7      133.    On or about 2020, Plaintiff Jahcoyah Geerer was diagnosed with testicular cancer
8  and subsequently underwent a right total orchiectomy in Sacramento, California.

9      134.    Plaintiff Darlena Goetz is a citizen and resident of Mission Viejo, California. From
10  approximately 1965 to 2025, Plaintiff Darlena Goetz was regularly exposed to PFAS through
11  drinking water at residences and workplaces in Mission Viejo, Long Beach, Los Angeles,
12  Manhattan Beach, Culver City, Burbank, Bell Gardens, and Monterey Park, California.

13      135.    On or about 2023, Plaintiff Darlena Goetz was diagnosed with kidney cancer and
14  subsequently underwent a left partial nephrectomy in Irvine, California. On or about 2010,
15  Plaintiff Darlena Goetz was diagnosed with thyroid disease in Irvine, California. On or about 2001,
16  Plaintiff Darlena Goetz was diagnosed with ulcerative colitis in Los Angeles, California.

17      136.    Plaintiff Herman Grajeda is a citizen and resident of Long Beach, California. From
18  approximately 1999 to 2025, Plaintiff Herman Grajeda was regularly exposed to PFAS through
19  drinking water at residences in Long Beach and Bell Gardens, California.

20      137.    On or about 2021, Plaintiff Herman Grajeda was diagnosed with clear cell renal
21  carcinoma in Torrance, California.

22      138.    Plaintiff David Guenther is a citizen and resident of Sacramento, California. From
23  approximately 1972 to 2021, Plaintiff David Guenther was regularly exposed to PFAS through
24  drinking water at residences and workplaces in Elk Grove, Sacramento, West Sacramento, and
25  Redding, California.

26      139.    On or about 2012, Plaintiff David Guenther was diagnosed with clear cell renal
27  carcinoma and subsequently underwent a right partial nephrectomy in Sacramento, California.

28      140.    Plaintiff Tyler Gunn is a citizen and resident of Redding, California. From

approximately 2017 to 2025, Plaintiff Tyler Gunn was regularly exposed to PFAS through drinking water at residences in Redding, California.

141.    On or about 2023, Plaintiff Tyler Gunn was diagnosed with testicular cancer in Redding, California, and subsequently underwent a right total orchiectomy, a retroperitoneal lymph node dissection, and chemotherapy.

142.    Plaintiff Felicia Guyton is a citizen and resident of Los Angeles, California. From approximately 2000 to 2025, Plaintiff Felicia Guyton was regularly exposed to PFAS through drinking water at residences in Los Angeles, California and Columbia and Baltimore, Maryland.

143.    On or about 2021, Plaintiff Felicia Guyton was diagnosed with kidney cancer and subsequently underwent a left radical nephrectomy in Los Angeles, California.

144.    Plaintiff Gloria Hamilton is a citizen and resident of Bakersfield, California. From approximately 1965 to 2024, Plaintiff Gloria Hamilton was regularly exposed to PFAS through drinking water at residences in Bakersfield and Compton, California.

145.    On or about 2006, Plaintiff Gloria Hamilton was diagnosed with kidney cancer and subsequently underwent a left radical nephrectomy in Bakersfield, California.

146.    Plaintiff Jamison Hartley is a citizen and resident of Ventura, California. From approximately 1994 to 2024, Plaintiff Jamison Hartley was regularly exposed to PFAS in drinking water at residences and workplaces in Los Angeles, Santa Monica, Ventura, and Santa Barbara, California.

147.    On or about 2020, Plaintiff Jamison Hartley was diagnosed with kidney cancer and subsequently underwent a left partial nephrectomy in Santa Monica, California.

148.    Plaintiff Darren Hassenauer is a citizen and resident of Oakland, California. From approximately 1997 to 2025, Plaintiff Darren Hassenauer was regularly exposed to PFAS through drinking water at residences and workplaces in Oakland, California, New York, New York, and Columbus, Ohio.

149.    On or about 2016, Plaintiff Darren Hassenauer was diagnosed with testicular cancer in San Francisco, California and subsequently underwent a left total orchiectomy and a cycle of chemotherapy.

150.    Plaintiff Gary Hedman is a citizen and resident of Bakersfield, California. From approximately 1970 to 2025, Plaintiff Gary Hedman was regularly exposed to PFAS through drinking water at residences in Bakersfield and Los Angeles, California.

151.    On or about 2015, Plaintiff Gary Hedman was diagnosed with kidney cancer in Casa Grande, Arizona and subsequently underwent a right radical nephrectomy in Los Angeles, California. On or about 2018, Plaintiff Gary Hedman was again diagnosed with kidney cancer in Los Angeles, California and subsequently underwent immunotherapy and chemotherapy treatments.

152.    Plaintiff Leslie Henning is a citizen and resident of Sacramento, California. From approximately 1977 to 2017, Plaintiff Leslie Henning was regularly exposed to PFAS through drinking water at residences in Cameron Park, Sacramento, Shingle Springs, Hamilton City, and Chico, California.

153.    On or about 2021, Plaintiff Leslie Henning was diagnosed with kidney cancer in Folsom, California and subsequently underwent a right radical nephrectomy in San Francisco, California and immunotherapy in Folsom, California.

154.    Plaintiff Rafael Hernandez, Jr. is a citizen and resident of Rialto, California. From approximately 1979 to 2025, Plaintiff Rafael Hernandez, Jr. was regularly exposed to PFAS through drinking water at residences in Rialto, Upland, Pomona, and Los Angeles, California.

155.    On or about 2016, Plaintiff Rafael Hernandez, Jr. was diagnosed with kidney cancer in Colton, California and subsequently underwent a right radical nephrectomy.

156.    Plaintiff John Iseminger is a citizen and resident of Burbank, California. From approximately 1986 to 2025, Plaintiff John Iseminger was regularly exposed to PFAS through drinking water at residences and workplaces in Burbank, Los Angeles, and Beverly Hills, California and Hempstead and Baltimore, Maryland.

157.    On or about 2011, Plaintiff John Iseminger was diagnosed with testicular cancer in Burbank, California and subsequently underwent a left total orchiectomy in Burbank, California. On or about 2023, Plaintiff John Iseminger was diagnosed with testicular cancer in Santa Barbara, California and subsequently underwent a right total orchiectomy in Santa Barbara, California.

158.    Plaintiff Genevieve Joseph is a citizen and resident of Chula Vista, California. From approximately 1959 to 2025, Plaintiff Genevieve Joseph was regularly exposed to PFAS through drinking water at residences and workplaces in Chula Vista, California.

159.    On or about 2023, Plaintiff Genevieve Joseph was diagnosed with clear cell renal carcinoma in San Diego, California and subsequently underwent immunotherapy and chemotherapy treatments.

160.    Plaintiff Felipe Vega, Jr. is a citizen and resident of Livingston, California. From approximately 2003 to 2017, Plaintiff Felipe Vega, Jr. was regularly exposed to PFAS through drinking water at residences in Merced, San Jacinto, and Fresno, California.

161.    On or about February 2023, Plaintiff Felipe Vega, Jr. was diagnosed with kidney cancer in Turlock, California and subsequently underwent a left nephrectomy.

162.    Plaintiff Ricardo Vidrio is a citizen and resident of Los Angeles, California. From approximately 1989 to 2025, Plaintiff Ricardo Vidrio was regularly exposed to PFAS through drinking water at residences and workplaces in Los Angeles and Montebello, California.

163.    On or about March 2024, Plaintiff Ricardo Vega was diagnosed with kidney cancer in Los Angeles, California and subsequently began chemotherapy.

164.    Plaintiff David Viloria is a citizen and resident of Chino, California. From approximately 1991 to 2025, Plaintiff David Viloria was regularly exposed to PFAS through drinking water at residences and workplaces in Chino, Pomona, Diamond Bar, and La Verne, California.

165.    On or about October 2006, Plaintiff David Viloria was diagnosed with kidney cancer in Pomona, California and subsequently underwent a radical nephrectomy.

166.    Plaintiff Alana Welz is a citizen and resident of Roseville, California. From approximately 1978 to 2025, Plaintiff Alana Welz was regularly exposed to PFAS through drinking water at residences and workplaces in Rancho Cordova, Roseville, Citrus Heights, Sacramento, and Fairfield, California.

167.    On or about November 2010, Plaintiff Alana Welz was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a radical nephrectomy.

168.   Plaintiff Holly West is a citizen and resident of Santa Rosa, California. From approximately 1992 to 2025, Plaintiff Holly West was regularly exposed to PFAS through drinking water at a residence in Santa Rosa, California.

169.   On or about January 2017, Plaintiff Holly West was diagnosed with kidney cancer in Santa Rosa, California and subsequently underwent a partial nephrectomy.

170.   Plaintiff Michael Whitaker is a citizen and resident of Corona, California. From approximately 1993 to 2025, Plaintiff Michael Whitaker was regularly exposed to PFAS through drinking water at residences and workplaces in Corona, Riverside, Anaheim, Yorba Linda, and Placentia, California.

171.   On or about 2015, Plaintiff Michael Whitaker was diagnosed with kidney cancer in Riverside, California, and subsequently underwent a right partial nephrectomy. On or about 2000, Plaintiff Michael Whitaker was diagnosed with thyroid disease.

172.   Plaintiff Richard Williams is a citizen and resident of Redding, California. From approximately 1993 to 2025, Plaintiff Richard Williams was regularly exposed to PFAS through drinking water at residences in Redding, California.

173.   On or about 2024, Plaintiff Richard Williams was diagnosed with testicular cancer in Redding, California and subsequently underwent a right total orchiectomy.

174.   Plaintiff Diane Williams is a citizen and resident of Stockton, California. From approximately 1974 to 2017, Plaintiff Diane Williams was regularly exposed to PFAS through drinking water at residences and workplaces in Stockton, San Leandro, and Oakland, California.

175.   On or about February 2025, Plaintiff Diane Williams was diagnosed with kidney cancer in Stockton, California.

176.   Plaintiff Wayne Wong is a citizen and resident of Sacramento, California. From approximately 1985 to 2025, Plaintiff Wayne Wong was regularly exposed to PFAS through drinking water at residences and workplaces in Sacramento and Roseville, California.

177.   On or about 2009, Plaintiff Wayne Wong was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a right radical nephrectomy in Carmichael, California and immunotherapy and radiation treatments in Sacramento, California.

178.    Plaintiff Neill Wood is a citizen and resident of Campbell, California. From approximately 1986 to 2025, Plaintiff Neill Wood was regularly exposed to PFAS through drinking water at residences in Campbell, San Jose, and Los Gatos, California.

179.    From approximately 1977 to 1980, Plaintiff Neill Wood was regularly exposed to PFAS through drinking water while stationed at Fort Ord, California, Fort Huachuca, Arizona, and Fort Jackson, South Carolina.

180.    On or about March 2025, Plaintiff Neill Wood was diagnosed with kidney cancer in San Jose, California and subsequently underwent a right radical nephrectomy.

181.    Plaintiff Robert Ybarra is a citizen and resident of Montebello, California. From approximately 1952 to 2025, Plaintiff Robert Ybarra was regularly exposed to PFAS through drinking water at residences and workplaces in Montebello and East Los Angeles, California.

182.    On or about 2024, Plaintiff Robert Ybarra was diagnosed with kidney cancer in Whittier, California and subsequently underwent a left radical nephrectomy and immunotherapy.

183.    Plaintiff Denny Aaron Desantis is a citizen and resident of Merced, California. From approximately 1997 to 2025, Plaintiff Denny Aaron Desantis was regularly exposed to PFAS through drinking water at residences and workplaces in Merced and Atwater, California and Las Vegas, Nevada.

184.    On or about 2013, Plaintiff Denny Aaron Desantis was diagnosed with testicular cancer in Merced, California and subsequently underwent a total orchiectomy in Turlock, California.

185.    Plaintiff Marcus Dittmar is a citizen and resident of Sacramento, California. From approximately 2001 to 2025, Plaintiff Marcus Dittmar was regularly exposed to PFAS through drinking water at residences and workplaces in Sacramento, Georgetown, and Garden Valley, California.

186.    On or about 2018, Plaintiff Marcus Dittmar was diagnosed with testicular cancer in Placerville, California and diagnosed with thyroid disease in Sacramento, California, and subsequently underwent radiation and chemotherapy treatments in Sacramento, California.

187.    Plaintiff Linda Dove is a citizen and resident of Yuba City, California. From

approximately 1982 to 2008, Plaintiff Linda Dove was regularly exposed to PFAS through drinking water at residences and workplaces in West Linda, Yuba City, Fairfield, Gold River, Vacaville, Marysville, and San Diego, California.

188.    On or about 2018, Plaintiff Linda Dove was diagnosed with kidney cancer and ulcerative colitis in Sacramento, California and subsequently underwent a right radical nephrectomy. On or about 2022, Plaintiff Linda Dove was diagnosed with thyroid disease in Yuba City, California.

189.    Plaintiff Jorge Flores is a citizen and resident of Oceanside, California. From approximately 1973 to 2025, Plaintiff Jorge Flores was regularly exposed to PFAS through drinking water at residences and workplaces in Oceanside, Long Beach, Compton, Paramount, and Downey, California.

190.    On or about 2024, Plaintiff Jorge Flores was diagnosed with kidney cancer in San Diego, California, and subsequently underwent a right radical nephrectomy in San Marcos, California. Additionally, on or about 2025, Plaintiff Jorge Flores underwent immunotherapy treatments in San Marcos, California.

191.    Plaintiff Jesus Garcia, Jr. is a citizen and resident of Fresno, California. From approximately 1990 to 2025, Plaintiff Jesus Garcia, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Fresno, California.

192.    On or about 2023, Plaintiff Jesus Garcia, Jr. was diagnosed with testicular cancer in Fresno, California and subsequently underwent a right total orchiectomy and chemotherapy.

193.    Plaintiff Gwendolyn Gilmer is a citizen and resident of Bakersfield, California. From approximately 1970 to 2025, Plaintiff Gwendolyn Gilmer was regularly exposed to PFAS through drinking water at residences in Bakersfield and Los Angeles, California and Louisville, Kentucky.

194.    On or about 2017, Plaintiff Gwendolyn Gilmer was diagnosed with kidney cancer in Bakersfield, California and subsequently underwent a right, radical nephrectomy.

195.    Plaintiff Edwin Gomez is a citizen and resident of Palmdale, California. From approximately 1992 to 2025, Plaintiff Edwin Gomez was regularly exposed to PFAS through

drinking water at residences in Palmdale, Newbury Park, and Moorpark, California.

196.    On or about 2017, Plaintiff Edwin Gomez was diagnosed with testicular cancer in Los Angeles, California, and subsequently underwent a left total orchiectomy and chemotherapy in Los Angeles, California.

197.    Plaintiff Jesus Gomez, Jr. is a citizen and resident of Bakersfield, California. From approximately 2004 to 2025, Plaintiff Jesus Gomez, Jr. was regularly exposed to PFAS through drinking water at residences in Bakersfield, California.

198.    On or about 2019, Plaintiff Jesus Gomez, Jr. was diagnosed with kidney cancer in Bakersfield, California and subsequently underwent a right partial nephrectomy.

199.    Plaintiff Michael Wright is a citizen and resident of Fairfield, California. From approximately 1994 to 2025, Plaintiff Michael Wright was regularly exposed to PFAS through drinking water at residences and workplaces in Vacaville and Fairfield, California.

200.    On or about 2022, Plaintiff Michael Wright was diagnosed with clear cell renal carcinoma in Vacaville, California and subsequently underwent a cryoblation.

201.    Plaintiff Lawrence Zerg is a citizen and resident of Santa Clarita, California. From approximately 1991 to 2025, Plaintiff Lawrence Zerg was regularly exposed to PFAS through drinking water at residences in Santa Clarita, Sherman Oaks, and Studio City, California.

202.    On or about 2010, Plaintiff Lawrence Zerg was diagnosed with kidney cancer in Santa Clarita, California and subsequently underwent a right, radical nephrectomy.

**B.  Defendants**

203.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

204.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout

1   the country.

2       205.   3M is the only company that manufactured and/or sold AFFF containing PFOS.

3       206.   **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is

4   a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201,

5   Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC,

6   Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

7       207.   **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation

8   organized under the laws of Japan and does business throughout the United States. AGC has its

9   principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

10      208.   **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a

11   Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10,

12   Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary

13   of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

14      209.   **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under

15   the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King

16   of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

17      210.   **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its

18   principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon

19   information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

20      211.   **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a

21   foreign corporation organized and existing under the laws of the State of Ohio, with its principal

22   place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant

23   manufactured and sold AFFF that contained PFOA.

24      212.   **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a

25   Texas corporation with its principal place of business located at 2 Stanton Street, Marinette,

26   Wisconsin 54143.

27      213.   **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation

28   organized and existing under the laws of the State of Wisconsin, with its principal place of business

1    located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold

2    AFFF that contained PFOA.

3        214.   **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York

4    corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North

5    Carolina 28205.

6        215.   **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with

7    its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

8        216.   **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a

9    DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974

10   Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017

11   as a result of the merger of Dow Chemical and DuPont.

12       217.   Upon information and belief, Corteva was originally formed in February 2018 as a

13   wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its

14   agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all

15   issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way

16   of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became

17   the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

18       218.   Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc.,

19   DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon

20   information and belief, New DuPont retained assets in the specialty products business lines, as

21   well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

22       219.   **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with

23   its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

24   Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in

25   AFFF.

26       220.   **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a

27   corporation organized and existing under the laws of the State of Delaware with its principal place

28   of business located at 974 Centre Road, Wilmington, Delaware 19805.

221.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

222.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

223.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

224.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

225.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

226.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

227.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

228.    All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of California.

229.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

230.    The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION & VENUE

231.    This Court has jurisdiction pursuant to Cal. Const. art. VI, § 10.

232.    This Court may exercise personal jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market either through the distribution or sale of products containing PFAS in the State of California or by having a manufacturing, distribution or other facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

233.    Venue is appropriate in this county pursuant to Cal. Code Civ. Proc. §395 as facts giving rise to the Plaintiff's injury occurred in this County.

### IV.    FACTUAL ALLEGATIONS

**A.  The PFAS Contaminants at Issue: PFOA and PFOS**

234.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as

per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

235.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

236.    PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

237.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

238.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

239.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perflurooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at  https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

1    hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

2        240.    The EPA has warned that there is suggestive evidence of the carcinogenic potential

3    for PFOA and PFOS in humans.[4]

4        241.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over

5    400 studies published since 2016 and applying human health risk assessment approaches, tools,

6    and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS

7    exposure at which negative outcomes could occur are much lower than previously understood

8    when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA

9    therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02

10   ppt for PFOS.[5]

11       242.    In April, 2024, EPA established legally enforceable levels, called Maximum

12   Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and

13   HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or

14   more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the

15   combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-

16   based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.  The

17   MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

18       B.   **Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant**

19            **Times**

20       243.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first

21   developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

22       244.    Generally, AFFF is used to extinguish fires, particularly fires that involve

23   _____

24   [3] *Id.*

25   [4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

26   [5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at

27   https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

28   [6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

245.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

246.    When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).  When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

247.    Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

248.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

C.  **Defendants' Knowledge of PFOA and PFOS Hazards**

249.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-

1    potable, and can be removed from public drinking water supplies only at substantial expense.

2    250.    At all times pertinent herein, Defendants also knew or should have known that

3    PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

4    gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous

5    system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that

6    cause genetic damage.

7    251.    For instance, in 1980, 3M published data in peer reviewed literature showing that

8    humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take

9    a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all

10    exposures had ceased.7

11    252.    By the early 1980s, the industry suspected a correlation between PFOA exposure

12    and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in

13    workers' bodies and birth defects in children of workers.

14    253.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers

15    in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed

16    workers, finding two of seven children born to female plant workers between 1979 and 1981 had

17    birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.8

18    254.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the

19    bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this

20    present trend with serious concern. It is certainly possible that [...] exposure opportunities are

21    providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."9

22

23    _____

    [7] See Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a*
24    *preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

    [8] See DuPont, *C-8 Blood Sampling Results,* available at
25    https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODl2ODk5ODk.*_ga_CS21G
    C49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.16835878
26    69-581783177.1682689989 (last accessed March 11, 2025).

27    [9] See 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), Office of Minnesota Attorney
    General, Exhibit List, No. 1313,-available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last
28    accessed March 11, 2025).

255.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

256.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

257.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

258.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

259.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

260.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the

---

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

[11] *Id.*

1    settlement of a class action over DuPont's releases from the Washington Works plant had reviewed

2    the available scientific evidence and notified DuPont of a "probable link"12 between PFOA

3    exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and

4    preeclampsia.13  By October 2012, the C8 Science Panel had notified DuPont of a probable link

5    between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease,

6    testicular cancer, and ulcerative colitis.

7         261.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a

8    new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped

9    its perfluorinated chemical liabilities into the lap of the new Chemours.

10        262.    Defendants also knew or should have known that: (a) users of AFFF would likely

11   include fire and rescue training organizations and their personnel; (b) fire and rescue personnel

12   were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training

13   and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when

14   used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of

15   these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or

16   affirmative instructions in the use of AFFF.

17        263.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

18   designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued

19   instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the

20   users of AFFF of the dangers to human health that result from the standard use and disposal of

21   these products; negligently designed products containing or degrading into PFOA and/or PFOS;

22   and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of

23   AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity

24

25   12 Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not
     that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8
26   Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March
     11, 2025).

27   13  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8
     Health Project (July 15, 2011), available at
28   http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed
     March 11, 2025).

1    of the purchasers of the PFOA/PFOS.

2        264.    Further, Defendants failed to disclose to environmental regulators and the general

3    public the likely existence of and health risks to the public caused by widespread PFOA and PFOS

4    contamination in drinking water supplies across the country as a result of AFFF usage.

5        265.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered

6    severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and

7    proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

8        266.    Defendants had a duty and breached their duty to evaluate and test such products

9    adequately and thoroughly to determine their potential human health impacts before they sold such

10    products. They also had a duty and breached their duty to minimize the risk of harm to human

11    health caused by PFOA and PFOS.

12    **D.  <u>The Impact of PFOA and PFOS on the Plaintiffs</u>**

13        267.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS

14    over many years as a result of Defendants' conduct.

15        268.    Plaintiffs have been diagnosed with the serious injuries set forth above, including

16    kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

17        269.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

18        270.    The use of Fluorosurfactant Products as directed and intended by the manufacturers

19    caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

20        271.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set

21    forth in this complaint, Plaintiffs were damaged in the following ways:

22            a.    Plaintiffs suffered physical pain and mental anguish;

23            b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

24                and

25            c.    Plaintiffs experienced undue stress related to their diagnoses, medical

26                conditions, and uncertainty about their prognosis.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**STRICT LIABILITY – DESIGN DEFECT – CONSUMER EXPECTATION TEST**

272.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

273.    Plaintiffs were harmed by Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards of human exposure.

274.    Defendants' Fluorosurfactant Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

275.    Defendants represented, asserted, claimed and/or warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

276.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

277.    Defendants' Fluorosurfactant Products were used by or near Plaintiffs in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

278.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in exposure of humans to PFOA and/or PFOS and to resulting injury.

279.    Furthermore, Defendants knew, or should have known, that their Fluorosurfactant Products were toxic and associated with medical conditions in humans.

280.    Plaintiffs were, are and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

281.    Defendants' Fluorosurfactant Products' failure to perform safely was a substantial

factor in causing Plaintiffs' harm.

282.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal injuries as discussed throughout this Complaint.

283.     Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users like Plaintiffs.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' health.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – DESIGN DEFECT – RISK BENEFIT TEST

284.     Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

285.     Plaintiffs were harmed by Fluorosurfactant Products designed, manufactured, marketed, sold and/or distributed by Defendants.

286.     Plaintiffs were, are, and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

287.     The design of Defendants' Fluorosurfactant Products was a substantial factor in causing harm to Plaintiffs.

288.     The gravity of the harm to Plaintiffs resulting from Defendants' Fluorosurfactant Products outweighs the benefits of the Products' design.

289.     The likelihood that PFAS-containing products and/or AFFF would cause injuries to Plaintiffs far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

290.     At the time of manufacture, there were safer alternative designs that were feasible, cost effective, and advantageous, including not using PFOS, PFOA and/or their precursor chemicals in products.

291.     Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to individuals, and

1   thus Defendants were grossly negligent.

2       292.    As a direct and proximate result of Defendants' unreasonably dangerous design,

3   manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal

4   injuries as discussed throughout this Complaint.

5       293.    Defendants knew that it was substantially certain that their acts and omissions

6   described above would threaten the health of users and the public, including Plaintiffs. Defendants

7   committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud,

8   oppression, or malice, and with conscious and/or reckless disregard for the health and safety of

9   others, and for the Plaintiffs' health.

10                              **THIRD CAUSE OF ACTION**

11                        **STRICT LIABILITY – FAILURE TO WARN**

12      294.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

13      295.    PFAS-containing products and/or AFFF are unreasonably dangerous for their

14   reasonably anticipated uses such that a risk of harm is inherent for the following reasons:

15      a.      Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or

16              disposed of in its foreseeable and intended manner;

17      b.      PFOA and PFOS are likely to infiltrate the water supply when AFFF is used,

18              handled, or disposed of in its foreseeable and intended manner;

19      c.      PFOA and PFOS exposure may cause diseases and cancers like Plaintiffs;

20      d.      PFOA and/or PFOS persist and bioaccumulate in the human body; and

21      e.      PFOA and/or PFOS pose significant threats to human and environmental health.

22      296.    As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant

23   Products, Defendants had a duty to issue warnings to consumers, users, and foreseeable

24   bystanders, including Plaintiffs, of the risks posed by exposure to PFAS (including PFOA and

25   PFOS).

26      297.    Defendants knew that their Fluorosurfactant Products would be purchased,

27   transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to

28   human health.

298.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiffs, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

299.    At all relevant times, including the time AFFF products were marketed, Defendants knew of or should have reasonably foreseen the human health risks associated with PFAS-containing products and/or AFFF, and Defendants failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or or an instruction that would have prevented the harm to Plaintiffs.

300.    Plaintiffs were exposed to PFAS-containing AFFF either directly or through their drinking water supply.

301.    At the time and place of Plaintiffs' exposure, Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

302.    Although Defendants were aware of the dangers posed by AFFF and Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

303.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

304.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

305.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten the health of users like Plaintiff.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

## **FOURTH CAUSE OF ACTION**

### **NEGLIGENCE – MANUFACTURER OR SUPPLIER – DUTY TO WARN**

306.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

307.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiffs, as well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

308.    Despite the fact that Defendants knew that PFOA and PFOS are toxic and present significant risks to human health, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting Plaintiffs' exposure to PFOA and/or PFOS; (c) failed to warn the users of Fluorosurfactant Products of the dangers of exposure inherent in the use of these products; and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

309.    A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant Products.

310.    Plaintiffs were, are, and will continue to be harmed.

311.    Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

312.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

313.    As a direct and proximate result of Defendants' above-described acts and omissions, Plaintiffs have incurred, continue to incur, and/or will incur costs and damages related to the PFAS contamination of their Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination,

1    operating, maintenance and consulting costs, legal fees, and diminished property value.

2    314.   Although Defendants were aware of the dangers posed by AFFF and

3    Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

4    315.   As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

5    personal injuries and costs and damages resulting therefrom.

6    316.   The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

7    317.   Defendants knew that it was substantially certain that its acts and omissions

8    described above would threaten the health of users and bystanders, including Plaintiffs.

9    Defendants committed each of the above-described acts and omissions knowingly, willfully,

10   and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the

11   health and safety of others and for the Plaintiffs' health.

12                                **FIFTH CAUSE OF ACTION**

13                          **NEGLIGENCE – FAILURE TO RECALL**

14   318.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

15   319.   Defendants' Fluorosurfactant Products were designed, manufactured, marketed,

16   distributed and sold without adequate warning of toxicity and potential human health risks.

17   320.   Defendants were negligent by not using reasonable care to warn or instruct about

18   the risks associated with their Fluorosurfactant Products.

19   321.   Defendants knew or reasonably should have known that their Fluorosurfactant

20   Products were dangerous or likely to be dangerous when used or misused in a reasonably

21   foreseeable manner.

22   322.   Defendants knew or reasonably should have known that users and third parties

23   would not realize the dangers.

24   323.   Defendants became aware of the human health risks presented by their

25   Fluorosurfactant Products by no later than the year 2000.

26   324.   Defendants failed to recall their Fluorosurfactant Products.

27   325.   A reasonable manufacturer, seller, or distributor, under the same or similar

28   circumstances would have warned of the dangers or instructed on the safe use of Fluorosurfactant

Products.

326.   Plaintiffs were, are, and will continue to be harmed.

327.   Defendants' failure to recall their Fluorosurfactant Products was a substantial factor in causing Plaintiffs' harm.

328.   Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

329.   Although Defendants were aware of the dangers posed by AFFF products, the dangers were unknown and not foreseeable to Plaintiffs.

330.   As a direct and proximate result of Defendants' failure to recall, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

331.   The Defendants' failure to recall constitutes a causative nexus in Plaintiffs' injuries.

332.   Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users and the general public, including Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT

333.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

334.   Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439, against E. I. Dupont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA Defendants").

335.   Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation

1    was incurred, if the debtor made the transfer or incurred the obligation as follows:

2        a.    With actual intent to hinder, delay, or defraud any creditor of the debtor;

3        b.    Without receiving a reasonably equivalent value in exchange for the transfer or

4    obligation of the debtor either:

5            A.    Was engaged or was about to engage in a business or a transaction

6            for which the remaining assets of the debtor were unreasonably small in relation to the

7            business or transaction.

8            B.    Intended to incur, or believed or reasonably should have believed

9            that the debtor would incur, debts beyond the debtor's ability to pay as they became

10           due."

11    336.    Further, Cal. Civ. Code Ann. § 3439 states that, "[i]n determining the actual intent

12    under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any

13    and all of the following: to all relevant factors including, but not limited to, the following: […]

14    whether before the transfer was made or obligation was incurred, the debtor had been sued or

15    threatened with suit, whether the transfer was of substantially all of the debtor's assets; […]

16    whether the value of the consideration received by the debtor was reasonably equivalent to the

17    value of the asset transferred or the amount of the obligation incurred."

18    337.    Upon information and belief, in February 2014, E. I. DuPont de Nemours and

19    Company formed The Chemours Company as a wholly owned subsidiary and used it to spin off

20    DuPont's "Performance Chemicals" business line in July 2015.

21    338.    Upon information and belief, at the time of the spinoff, DuPont's Performance

22    Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer

23    of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for

24    DuPont's historical use, manufacture, and discharge of PFAS.

25    339.    Upon information and belief, at the time of the transfer of its Performance

26    Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had

27    knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and

28    injuries from the manufacture and sale of Fluorosurfactant Products.

340.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

341.    Upon information and belief, the UTVA Defendants acted (a) with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

342.    The UVTA Defendants engaged in acts in furtherance of a scheme to transfer E. I. DuPont de Nemours and Company's assets out of the reach of parties, such as the Plaintiffs, that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions as described in this Complaint.

343.    As a result of the transfer of assets and liabilities described in this Complaint, the UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale of Fluorosurfactant Products.

344.    Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiffs seek to avoid the transfer of E.I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint and to hold the UVTA Defendants liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

345.    Plaintiffs further seek all other rights and remedies that may be available to them under UVTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate Plaintiffs for the damages and injuries they have suffered as alleged in this Complaint.

## SEVENTH CAUSE OF ACTION

## CIVIL CONSPIRACY

346.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

347.    At all times relevant herein, Defendants actually knew of the hazards that PFOS and/or PFOA posed to the health of those exposed to these compounds.

348.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiffs. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about Fluorosurfactant Products to the public and the government, with the true, unlawful purposes of:

a.    intentionally misrepresenting to the EPA and the public that their Fluorosurfactant Products were safe and did not pose a risk to human health and the environment;

b.    concealing the dangers of their Fluorosurfactant Products, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how Fluorosurfactant Products were being disposed of;

c.    concealing the dangers of PFOA and/or PFOS from consumers and the public; and

d.    using their considerable resources to fight legislation concerning PFOA and/or PFOS.

349.    As a direct and proximate result of Defendants' conspiracy, Defendants' Fluorosurfactant Products at all times relevant to this litigation have:

a.    Caused physical and emotional injuries to Plaintiffs;

b.    Caused Plaintiffs to incur, *inter alia*, medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses; and

c.    required and will continue to require monitoring of Plaintiffs' physical condition.

## TOLLING OF THE STATUTE OF LIMITATIONS

350.    Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

351.    Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

352.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

353.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

354.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

355.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

### **Fraudulent Concealment**

356.    Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF

1  products.

2  357.  This fraudulent concealment continues to the present day.

3  358.  Wherefore, due to Defendants' knowing and active fraudulent concealment and

4  denial of the facts alleged herein through the relevant time for this action, all applicable statutes

5  of limitations have also been tolled.

6  **Estoppel**

7  359.  Defendants were under a continuous duty to consumers, end users, and other

8  persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide

9  truthful and reliable safety information concerning their products and the risks associated with

10  their use, as well as exposure to AFFF.

11  360.  Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively

12  concealed important safety information and warnings concerning AFFF and the health risks

13  associated with the same.

14  361.  Wherefore, Defendants are estopped from relying on any statute of limitations in

15  defense of this action.

16  **PUNITIVE DAMAGES**

17  362.  Under the applicable laws of the State of California, Plaintiffs seek punitive

18  damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged

19  throughout this Complaint.

20  **PRAYER FOR RELIEF**

21  363.  Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

22  a.  Compensatory damages and all other special damages according to proof

23  including, but not limited to past and future medical and treatment costs;

24  non-economic damages; loss of earnings and future earnings; and

25  household expenses, among others;

26  b.  Avoiding the transfer of DuPont's liabilities for the claims brought in this

27  Complaint;

28  c.  Exemplary and Punitive damages;

1            d.     Consequential damages;

2            e.     Pre-judgment and post-judgment interest;

3            f.     Attorney's fees; and

4            g.     Any other and further relief as the Court deems just, proper, and equitable.

5      **<u>JURY TRIAL DEMANDED</u>**

6          Each Plaintiff hereby demands a trial by a jury on all of the triable issues of this

7      complaint. Plaintiffs do not seek to have their claims tried jointly.

8      Dated: June 17, 2025

9

10                     */s/ David Fernandes*
                       David Fernandes (SBN 280944)

11                     **BARON & BUDD, P.C.**
                       Holly Werkema (TX Bar No. 24081202)

12                     *(Pro Hac Vice Forthcoming)*
                       hwerkema@baronbudd.com

13                     3102 Oak Lawn Avenue, Suite 1100
                       Dallas, TX 75219

14                     Tel.: (214) 521-3605
                       Fax: (214) 279-9915

15                     Email: dfernandes@baronbudd.com

16

17                     **COSSICH, SUMICH, PARSIOLA**
                       **& TAYLOR, LLC**

18                     Philip F. Cossich, Jr. (LA Bar No. 1788)
                       *(Pro Hac Vice Forthcoming)*

19                     pcossich@cossichlaw.com
                       Christina M. Cossich (LA Bar No. 32407)

20                     *(Pro Hac Vice Forthcoming)*
                       ccossich@cossichlaw.com

21                     8397 Highway 23, Suite 100
                       Belle Chasse, LA 70037

22                     Telephone: (504) 394-9000

23                     *Attorneys for Plaintiffs*

24

25

26

27

28